**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Espinoza,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Trans Union LLC, et al.,<br><br>　　　　　Defendants. | No. CV-22-01670-PHX-DWL<br><br>**ORDER** |

Pending before the Court is a motion to dismiss filed by Defendant Trans Union LLC ("Trans Union"). (Doc. 17.) The motion is fully briefed and neither side requested oral argument. (Docs. 21, 23.) For the following reasons, the motion is granted.

**RELEVANT BACKGROUND**

On January 31, 2023, Plaintiff filed the operative pleading in this action, the First Amended Complaint ("FAC"). (Doc. 14.) As relevant to Trans Union,[1] the FAC alleges as follows.

On an unspecified date, non-party Nissan Acceptance "inaccurately reported" a tradeline regarding Plaintiff to Trans Union. (*Id.* ¶ 7.) More specifically, "Nissan Acceptance is reporting an inaccurate payment . . . status of 60-89 days late on Plaintiff's Trans Union credit disclosure." (*Id.* ¶ 8.) "The reporting is inaccurate because the account

---

[1] The FAC also names Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Citibank, N.A. ("Citibank") as Defendants. (Doc. 14.) Plaintiff has since settled with Experian (Docs. 24, 34) and was ordered to arbitrate his claims as to Citibank (Doc. 35). Equifax filed an answer to the FAC (Doc. 36) and remains a Defendant.

1 reflected by the Nissan Acceptance False Tradeline was paid by Plaintiff in full." (*Id.*
2 ¶ 11.)
3      "On August 26, 2022, Plaintiff, through Credit Repair Lawyers of America,
4 submitted a letter to Trans Union disputing the Nissan Acceptance False Tradeline. In his
5 letter, Plaintiff explained that the account reflected by the Nissan Acceptance False
6 Tradeline was paid in full by the Plaintiff and electronically signed the letter [sic]. Plaintiff
7 attached the Nissan Payment History and Nissan Lien Satisfaction letter verifying the same.
8 He asked the Trans Union to correct the inaccurate reporting." (*Id.* ¶¶ 13-14.) However,
9 "[o]n September 14, 2022, Plaintiff received a letter from Trans Union stating that it didn't
10 appear that Plaintiff or a properly authorized third party send [sic] the letter to them, hence,
11 Defendant failed or refused to provide the Plaintiff with the result of their investigation."
12 (*Id.* ¶ 21.)
13      Based on these allegations, Plaintiff asserts two claims against Trans Union. First,
14 in Count Three of the FAC, Plaintiff asserts a claim for negligent violation of the Fair
15 Credit Reporting Act ("FCRA"). (*Id.* ¶¶ 41-47.) More specifically, Plaintiff alleges that
16 (1) "Trans Union negligently failed to maintain and/or follow reasonable procedures to
17 assure maximum possible accuracy of the information it reported to one or more third
18 parties pertaining to Plaintiff, in violation of 15 USC 1681e(b)"; and (2) "[a]fter receiving
19 Plaintiff's consumer dispute to the False Tradeline, Trans Union negligently failed to
20 conduct a reasonable reinvestigation as required by 15 U.S.C. 1681i." (*Id.*) Second, in
21 Count Four of the FAC, Plaintiff asserts a claim for willful violation of the FCRA. (*Id.*
22 ¶¶ 48-54.) The allegations underlying this claim are similar to the allegations underlying
23 Count Three, except Plaintiff alleges that Trans Union's failures were willful rather than
24 negligent. (*Id.* ¶¶ 45, 52.)
25      …
26      …
27      …
28      …

**DISCUSSION**

I. <u>Legal Standard</u>

"[T]o survive a motion to dismiss under Rule 12(b)(6), a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II. <u>The Parties' Arguments</u>

Trans Union moves to dismiss Counts Three and Four pursuant to Rule 12(b)(6). (Doc. 17.) As an initial matter, Trans Union argues that because the FAC explicitly refers to, and incorporates by reference, Plaintiff's "correspondence to Trans Union and how his Nissan Account was reporting on his credit file at the time of his August 2022 dispute," the Court may take judicial notice of those items without converting Trans Union's motion into a motion for summary judgment. (*Id.* at 3-4.) To that end, Trans Union encloses, as an attachment to its motion, a copy of its October 2022 credit report concerning Plaintiff. (Doc. 17-2.)[2] Trans Union also provides a declaration from a Trans Union representative avowing that "[t]he Nissan Motor Acceptance Account displayed on Page 2 of 20 [of the October 2022 credit report] was last updated and closed by Nissan on June 9, 2022. This

---

[2] Although Trans Union's motion seems to suggest that Trans Union is also seeking consideration of the dispute-related correspondence between Plaintiff and Trans Union, no copies of that correspondence were provided by the parties.

account was reporting in August 2022 as shown on [the October 2022 credit report] at the time of Plaintiff's alleged August 2022 dispute." (Doc. 17-1 ¶ 5.) The relevant portion of the October 2022 credit report appears as follows:

| NISSAN MOTOR ACCEPTANCE # [redacted] (PO BOX 660366, DALLAS, TX 75266-0366, (800) 777-6700) | | | |
|---|---|---|---|
| Date Opened: 06/27/2015 | Date Updated: 06/09/2022 | Pay Status: ›Paid, Closed; was 60 days past due date‹ | |
| Responsibility: Individual Account | Payment Received: $176 | | |
| Account Type: Installment Account | Last Payment Made: 06/09/2022 | Terms: $0 per month, paid Monthly for 82 months | |
| Loan Type: AUTOMOBILE | | Date Closed: 06/09/2022 | |
| | | ›Maximum Delinquency of 60 days in 05/2022 for $1 and in 06/2022‹ | |

High Balance: High balance of $49,381 from 03/2021 to 03/2021; $49,381 from 05/2021 to 03/2022; $49,381 from 05/2022 to 06/2022
Estimated month and year that this item will be removed: 03/2029

| | 06/2022 | 05/2022 | 04/2022 | 03/2022 | 02/2022 | 01/2022 | 12/2021 | 11/2021 | 10/2021 | 09/2021 | 08/2021 | 07/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $0 | $176 | | $277 | $277 | $1,013 | $1,698 | $2,384 | $3,070 | $3,756 | $4,442 | $5,128 |
| Scheduled Payment | $0 | $685 | | $685 | $685 | $685 | $685 | $685 | $685 | $685 | $685 | $685 |
| Amount Paid | $176 | $0 | | $0 | $685 | $685 | $685 | $685 | $685 | $685 | $685 | $685 |
| Past Due | $0 | $1 | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Remarks | DRG/CLO | DRG | | DRG | DRG | DRG | DRG | DRG | DRG | DRG | DRG | DRG |
| Rating | 60 | 60 | 30 | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 06/2021 | 05/2021 | 04/2021 | 03/2021 | 02/2021 | 01/2021 | 12/2020 | 11/2020 | 10/2020 | 09/2020 | 08/2020 | 07/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balance | $5,800 | $6,473 | | $9,925 | | | | | | | | |
| Scheduled Payment | $685 | $685 | | $0 | | | | | | | | |
| Amount Paid | $685 | $685 | | $685 | | | | | | | | |
| Past Due | $0 | $0 | | $0 | | | | | | | | |
| Remarks | DRG | DRG | | PDE | | | | | | | | |
| Rating | OK | OK | X | X | X | X | X | X | X | X | X | X |

| | 06/2020 | 05/2020 | 04/2020 | 03/2020 | 02/2020 | 01/2020 | 12/2019 | 11/2019 | 10/2019 | 09/2019 | 08/2019 | 07/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | X | X | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 06/2019 | 05/2019 | 04/2019 | 03/2019 | 02/2019 | 01/2019 | 12/2018 | 11/2018 | 10/2018 | 09/2018 | 08/2018 | 07/2018 | 06/2018 | 05/2018 | 04/2018 | 03/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 02/2018 | 01/2018 | 12/2017 | 11/2017 | 10/2017 | 09/2017 | 08/2017 | 07/2017 | 06/2017 | 05/2017 | 04/2017 | 03/2017 | 02/2017 | 01/2017 | 12/2016 | 11/2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

| | 10/2016 | 09/2016 | 08/2016 | 07/2016 | 06/2016 | 05/2016 | 04/2016 | 03/2016 | 02/2016 | 01/2016 | 12/2015 | 11/2015 | 10/2015 | 09/2015 | 08/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

(Doc. 17-2 at 3.) With this background in mind, Trans Union argues that Plaintiff's FCRA claims necessarily fail. According to Trans Union, such claims "require a plaintiff to plead and prove an inaccuracy in his credit report or credit file." (Doc. 17 at 4-5.) Trans Union argues that the theory of inaccuracy asserted in the FAC is that Trans Union falsely reported Plaintiff's payment status as "60-89 days late" when the account "was paid by Plaintiff in full," but the excerpted portion of Plaintiff's credit report shows that, "when viewing the Account in its entirety, it becomes abundantly clear that Plaintiff's Account was accurately reported and does not look as if the Account was still open and 60 days late. Instead, the Nissan Account reflects that it: 1) has a balance of $0; 2) was last updated on June 9, 2022; 3) was closed on June 9, 2022; 4) was 60 days past due in May 2022 and June 2022 and

noted as its maximum delinquency; and (5) also has a Pay Status of closed." (*Id.* at 5.) Trans Union continues that "[t]he only reasonable reading of the Account, in its entirety, is that Plaintiff was 60 days past due in May 2022 and in June 2022, at which time (on June 9, 2022) the Account was closed, and the balance reduced to $0. It does not indicate, as Plaintiff contends, that the Account was currently '60-89 days late.'" (*Id.* at 6.) Trans Union also cites an array of decisions by district and circuit courts concluding that a derogatory "pay status" section reflecting historical late payments does not suggest that the account is still open and past due. (*Id.* at 6-13.) Trans Union concludes by asking the Court to reject Plaintiff's "tortured" theory "that reporting his accurate, derogatory payment history[] makes it look like the Account is still open with some outstanding amount due." (*Id.* at 13-14.) At a minimum, Trans Union argues the Court should dismiss Count Four because there are inadequate allegations of willfulness. (*Id.* at 14-17.)

Plaintiff opposes Trans Union's motion. (Doc. 21.) Plaintiff argues that Trans Union's dismissal arguments are unavailing because they are premised on the October 2022 credit report, which isn't properly before the Court at this stage of the case. (*Id.* at 6-8.) In response to Trans Union's contention that the October 2022 credit report was incorporated by reference in the FAC, Plaintiff argues that the "October 19, 2022 credit disclosure is not referred to in the Complaint and does not form any part of the basis of the Complaint. Rather, by letter dated August 26, 2022, Plaintiff disputed to Trans Union that the Nissan tradeline should report as paid in full. On or about September 14, 2022, Plaintiff received a letter from Trans Union stating that it didn't appear that Plaintiff or a properly authorized third party sent the letter to them." (*Id.* at 7.) Plaintiff further contends that the declaration from the Trans Union representative is not properly before the Court because "[t]he Declaration . . . is not referred to in the Complaint and is an improper attempt by Trans Union to refute Plaintiff's allegations, which this Court must accept as true when considering Trans Union's motion to dismiss. [The deponent] has not been deposed in this case to test the accuracy of his statements in the Declaration." (*Id.* at 6.) Turning to the merits, Plaintiff argues that the FAC adequately alleges an inaccuracy, as required to

- 5 -

support an FCRA claim, because "Plaintiff does not allege that a historical payment term is reporting inaccurately. Rather, Plaintiff alleges that Trans Union is reporting a 60-89 days late payment status for the Nissan tradeline. Plaintiff alleges that the account was paid in full and the payment status should reflect the payment in full. Plaintiff clearly pled the inaccuracy in the Nissan tradeline: the 60-89 days late negative payment status when Plaintiff has paid the account in full." (*Id.* at 8-9.) Elsewhere, Plaintiff elaborates: "Plaintiff clearly pled an inaccuracy. Specifically, Plaintiff pled that the Nissan tradeline inaccurately reported the payment status as 6[0]-89 days late in Plaintiff's Trans Union credit report when it was paid in full by Plaintiff. Without this accurate reporting notation, any creditor reading Plaintiff's credit report would be misled to believe that this account was not paid in full and active when, in fact, it was paid in full and is no longer Plaintiff's obligation." (*Id.* at 10.) Finally, Plaintiff defends the sufficiency of the FAC's willfulness allegations (*id.* at 12) and requests leave to amend in the event of dismissal (*id.* at 12-13).

In reply, Trans Union argues that the October 2022 credit report is properly before the Court because "the reporting of the Nissan account on Plaintiff's Trans Union file was indisputably referenced and centrally relied upon by Plaintiff in his Complaint" and that the accompanying declaration "was not being offered for any reason other than for authentication purposes." (Doc. 23 at 1-2.) Trans Union then reincorporates its arguments as to why the information contained in the October 2022 credit report cannot be considered inaccurate: "Plaintiff's account accurately reflected that the account was paid, closed, and that Plaintiff was 60 days past due at the time the account was closed." (*Id.* at 2-3.) Trans Union also contends that leave to amend should be denied because amendment would be futile. (*Id.* at 4.)

III.   Analysis

As a threshold matter, the Court must determine whether it may consider Plaintiff's October 2022 credit report, which Trans Union provided as an attachment to its motion. "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion

for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. Here, Trans Union seeks to rely on the incorporation-by-reference doctrine. The Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance. But the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

Applying these standards, the Court agrees with Trans Union that the credit report may be considered. Plaintiff's FCRA claims against Trans Union turn on the accuracy of the information contained in his Trans Union credit reports and the FAC contains specific allegations regarding the contents of those reports: "Nissan Acceptance is reporting an inaccurate payment . . . status of 60-89 days late on Plaintiff's Trans Union credit disclosure." (Doc. 14 ¶ 8.) This is precisely the sort of scenario that triggers the incorporation-by-reference doctrine. *See, e.g., Nelson v. Equifax Info Servs., LLC*, 2021 WL 4497500, *2 (C.D. Cal. 2021) ("[B]ecause the Complaint references Westlake's credit reporting to Equifax and the credit report is the basis of Plaintiff's claims, the Court can consider the credit reporting based on the incorporation by reference doctrine in ruling on the instant Motion.") (citations omitted); *Holmes v. JP Morgan Chase Bank*, 2019 WL 2183449, *1 n.2 (S.D. Cal. 2019) ("The Court will consider Plaintiff's credit report pursuant to the doctrine of incorporation by reference."); *Torion v. JPMorgan Chase Bank, Nat. Ass'n*, 2017 WL 2986250, *4 (N.D. Cal. 2017) ("[A]lthough the credit reports were not attached to the complaint, the court will consider them on Chase's motion to dismiss pursuant to the incorporation by reference doctrine."); *Muehlenberg v. Experian Info.*

*Solutions, Inc.*, 2017 WL 6622837, \*3 n.2 (N.D. Cal. 2017) ("While the credit reports themselves were not submitted with the pleadings, . . . [b]ecause Muehlenberg both 'refers extensively to the document[s]' and they 'form[] the basis of the Muehlenberg's claim[s],' I will consider these documents incorporated by reference in Muehlenberg's Second Amended Complaint.").

There are two potential wrinkles, but neither undermines the conclusion that the document submitted by Trans Union was incorporated by reference in the FAC. The first is a timing issue. Trans Union has submitted a credit report that was issued in October 2022, but the FAC alleges that Plaintiff noticed an inaccuracy in his Trans Union credit report at some point before August 2022 and then complained to Trans Union in August 2022, only for Trans Union to decline to address his concerns. (Doc. 14 ¶¶ 13-14, 21.) If Plaintiff's claims against Trans Union turned on inaccuracies that appeared in earlier versions of his credit reports but had been changed by October 2022, this timing issue might present a hurdle to the incorporation-by-reference analysis. *Cf. Moses v. Experian Info. Solutions, Inc.*, 2016 WL 3670068, \*3 (N.D. Cal. 2016) ("The February 2016 reports submitted by AFNI were obtained months after the credit reports referenced in the FAC and do not speak to the contents of the credit reports that form the basis of Plaintiff's FCRA claim. AFNI's request for incorporation by reference is DENIED."). But that is not the situation here. The FAC, which was filed in January 2023, specifically alleges that the same inaccuracies that prompted Plaintiff to complain to Trans Union in August 2022 continue to appear in his Trans Union credit reports: "Nissan Acceptance *is reporting* an inaccurate payment . . . status of 60-89 days late on Plaintiff's Trans Union credit disclosure." (Doc. 14 ¶ 8, emphasis added.) Additionally, the document submitted by Trans Union indicates that Trans Union's reporting in relation to Plaintiff's Nissan account was last updated on "06/09/2022." (Doc. 17-2 at 3.) This is further evidence that the reporting set forth in Plaintiff's October 2022 credit report is the same reporting that gives rise to Plaintiff's claims. Plaintiff conspicuously does not suggest otherwise in his opposition brief.

The second wrinkle relates to authentication. As noted, one of the requirements for incorporation by reference is that "the document's authenticity is not in question." *Coto Settlement*, 593 F.3d at 1038. Here, Trans Union has submitted a declaration from a qualified representative avowing that the October 2022 credit report is authentic. (Doc. 17-1 ¶ 6.) Meanwhile, Plaintiff's 16-page opposition brief does not raise any objections to the authenticity of the October 2022 credit report. (Doc. 21.) The word "authenticity" only appears once, in a generic recitation of the Ninth Circuit incorporation-by-reference standard (*id.* at 5), and Plaintiff's sole proffered reason for opposing consideration of the October 2022 credit report is that it was "not referred to in the Complaint and does not form any part of the basis of the Complaint" (*id.* at 6-7). However, Plaintiff also included, as an attachment to his opposition brief, a declaration from his counsel. (Doc. 21-1.) In that declaration, counsel asserts that "[i]f the Court converts Trans Union LLC's Motion to Dismiss to a summary judgment motion the [sic] pursuant to Fed. R. Civ. P. 56(d) there is a need for Plaintiff for facts essential to justify opposition to a summary judgment motion though discovery. Specifically, discovery regarding the Declaration of Don Wagner incorporated by Trans Union in its Motion to Dismiss and attached as Exhibit A, Doc #17-1, and the TransUnion credit disclosure attached as Exhibit A-1, Doc #17-2, including the authenticity and admissibility of the documents." (*Id.* at 2.)

The Court does not construe this passage in counsel's declaration as raising an authenticity challenge to the October 2022 credit report for purposes of the incorporation-by-reference analysis. Nowhere does Plaintiff, or Plaintiff's counsel, affirmatively question the authenticity of the October 2022 credit report. Mentioning a vague desire to conduct discovery into "the authenticity and admissibility" of various documents is a far cry from actually impugning the authenticity of Trans Union's proffered copy of the credit report that forms the basis of Plaintiff's claims. Clearly, Plaintiff knows what his credit report contains—the claims in the FAC against Trans Union are entirely premised upon it. But notably absent from Plaintiff's response is any assertion that the October 2022 credit report differs in any respect from the report in his possession. *Cf. Stewart v. Kodiak Cakes,*

*LLC*, 537 F. Supp. 3d 1103, 1119 (S.D. Cal. 2021) ("Plaintiffs raise the specter of an authenticity dispute . . . [but] Plaintiffs do not detail how [the disputed documents] are inauthentic, inaccurate, or disputed; instead, they merely question the manner in which they are presented before the Court. Therefore, Plaintiffs do not genuinely question the authenticity of the exhibits."); *Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, 2016 WL 6892140, *23 (C.D. Cal. 2016) (largely rejecting authenticity challenge to incorporation-by-reference request where "Plaintiffs did not object to the authenticity of the offered documents *per se*, but did state that they 'cannot agree to their authenticity'"). *Cf. Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) ("Whether the authentication requirement should be applied to bar evidence when its authenticity is not actually disputed . . . [is] questionable. . . . [A]n exception to the authentication requirement is particularly warranted in cases such as this where the objecting party does not contest the authenticity of the evidence submitted but nevertheless makes an evidentiary objection based on purely procedural grounds."). Nor did Plaintiff append to his response a copy of his credit report from August 2022 (or any other month) to demonstrate that the credit report provided by Defendant was potentially inauthentic.

Having concluded that the October 2022 credit report is properly before the Court and reflects the status of Trans Union's credit reporting for Plaintiff as of June 2022, the dismissal analysis is straightforward. Although the inquiry under Rule 12(b)(6) is generally "limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff," a court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Here, although the FAC attempts, through artful pleading, to suggest that Trans Union "report[ed] an inaccurate payment . . . status of 60-89 days late" even though Plaintiff's Nissan Acceptance account "was paid by Plaintiff in full" (Doc. 14 ¶¶ 8, 11), the actual credit report shows that Trans Union reported that Plaintiff's balance was $0 and that the "Pay Status" of the account was "Paid, Closed; *was* 60 days past due date." (Doc.

17-2 at 3, emphasis added.)  The actual credit report also provided details regarding the historical late payments that occurred before Plaintiff paid the account in full.  (*Id.*)

The Third Circuit's decision in *Bibbs v. Trans Union LLC*, 43 F.4th 331 (3d Cir. 2022), is instructive in evaluating whether such reporting may give rise to an FCRA claim.  In *Bibbs*, each plaintiff's credit report "contained a negative 'Pay Status' notation stating '>Account 120 Days Past Due<,'" but "[t]he entries also stated that the loans were closed, transferred, and had account balances of zero." *Id.* at 336.  Notably, unlike here (where the "Pay Status" line indicted that Plaintiff's account "was past due date" but had since become "Paid, Closed," *see* Doc. 17-2 at 3), there were "no verbs such as 'is' or 'was' or any other language in this entry that make 'patently' clear whether it means 'currently' 120 days past due or 'historically' 120 days past due." *Bibbs*, 43 F.3d at 343.  The plaintiffs sued Trans Union under the FCRA, arguing that their credit reports were misleading and inaccurate because "the only way to read this entry is to conclude it means 'currently' past due." *Id.*  The Third Circuit rejected this argument, explaining that the "reports contain multiple conspicuous statements reflecting that the accounts are closed and [plaintiffs] have no financial obligations to their previous creditors.  These statements are not in conflict with the Pay Status notations, because a reasonable interpretation of the reports in their entirety is that the Pay Status of a closed account is historical information." *Id.* at 344.  Thus, the Third Circuit held that the district court properly rejected the plaintiffs' FCRA claims, including their reinvestigation-based claims.  *Id.* at 345 ("[T]he Pay Status entries in [plaintiffs'] credit reports are neither inaccurate nor misleading to a reasonable reader.  That forecloses [their] claims under § 1681i(a), just as it does their § 1681e(b) claims.").

As Trans Union correctly notes in its motion, *Bibbs* is not an outlier in reaching this conclusion.  Instead, it is simply a recent example of a long string of decisions—including decisions by other district courts in Arizona—rejecting FCRA claims under similar circumstances.  *See, e.g., Sanchez v. JPMorgan Chase Bank NA*, 643 F. Supp. 3d 1025, 1036 (D. Ariz. 2022) ("As Plaintiff alleges, her tradeline does read 'Pay Status: Account 120 Days Past Due Date.'  Yet this is neither patently inaccurate nor materially misleading.

When 'Pay Status' is looked at in conjunction with the other items reported on her tradeline, it becomes obvious that the tradeline is reporting a historical pay status. Her tradeline lists her balance as zero, shows that the last payment was made in September of 2018, notes that the account was closed in 2018, and that it was settled for less than the full balance. Furthermore, no account information is provided for dates after September 2018. Her tradeline also notes the months during which she was delinquent. Finally, nowhere on the tradeline does it state that it is reporting a 'current' pay status. No reasonable reader could look at all of these facts and still believe that her Pay Status represents a current debt. Thus, the information reported is not patently inaccurate or materially misleading. Many other courts have held that there was no inaccuracy in similar circumstances."); *Gross v. Private National Mortgage Acceptance Company, LLC*, 512 F. Supp. 3d 423, 426-27 (E.D.N.Y. 2021) ("If a creditor read the 'Pay Status' entry in isolation, the creditor might conclude that the account was currently past due. But when the creditor read the rest of the entries, the creditor would surely forego that conclusion. The credit report contains several other entries that show that the '30 Days Past Due' refers to the period when the payments were due to PNMAC. For instance, the report shows that the account is closed and has a $0 balance. An account with a $0 balance cannot currently be past due—what would the debtor have to pay to bring the account current? . . . Reading these entries together, the only logical inference is that the account was previously 30 days past due. It is simply not plausible to think that a creditor would conclude otherwise.").

This is an even easier case than *Bibbs* and some of the other decisions cited by Trans Union. By including the word "was" in the Pay Status line immediately before the phrase "past due date," Trans Union clearly denoted that the current status of the account was "Paid, Closed" and that the "past due date" payments were simply part of Plaintiff's historical payment record. Thus, Plaintiff's credit report was "neither inaccurate nor misleading to a reasonable reader," which in turn "forecloses [his] claims under § 1681i(a), just as it does [his] § 1681e(b) claims." *Bibbs*, 43 F.4th at 345. *See also Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("In order to make out a prima

facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information."); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) ("Although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement.").

The final question is whether Plaintiff should be granted leave to amend. Rule 15(a) of the Federal Rules of Civil Procedure "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). "This policy is 'to be applied with extreme liberality.'" *Id.* (citation omitted). Thus, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). The Court agrees with Trans Union that leave to amend is unwarranted here due to futility. Plaintiff's credit report is not inaccurate and no attempt at amendment can change that fact. It is also telling that Plaintiff does not attempt to identify, in his request for leave to amend, any new facts he might be able to plead to cure the deficiencies identified by Trans Union.

Accordingly,

**IT IS ORDERED** that Trans Union's motion to dismiss (Doc. 17) is **granted**. Counts Three and Four of the FAC are dismissed without leave to amend and Trans Union is dismissed as a Defendant.

Dated this 25th day of September, 2023.

Dominic W. Lanza
United States District Judge

- 13 -